UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JOHN H. MILLER, III,            )
                                )
            Plaintiff,          )
                                )
        vs.                     )       No. 4:04-CV-818 (CEJ)
                                )
COCA-COLA ENTERPRISES,          )
                                )
            Defendant.          )

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion of defendant Coca-Cola Enterprises for summary judgment.  See Fed. R. Civ. P. 56(c). Plaintiff opposes the motion and the issues are fully briefed.

Plaintiff, John H. Miller, III, brings this action against his former employer, Coca-Cola Enterprises, claiming that he was subjected to harassment and a hostile work environment, and that he was disciplined and ultimately terminated, all because of his race, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq.  Defendant asserts that plaintiff cannot establish that he was subjected to racially discriminatory treatment and that the employment actions it took were prompted by plaintiff's misconduct and his breach of a "Last Clear Chance Agreement."

## I.  Background

Plaintiff, who is black, was hired by the defendant in 1987 as a truck driver.  He remained in that position until his termination.

During the early years of his employment, plaintiff had problems with a fellow driver, Kevin Kronk, who is white.  The plaintiff

testified that Kronk referred to a black employee as "pepper." According to plaintiff, the employee responded by calling Kronk "salt." Plaintiff also testified that Kronk told jokes about black people in East St. Louis and commented that they were all "crack heads." It appears that these comments were made during the 1980s before Kronk became a supervisor. Plaintiff testified that none of Kronk's racially derogatory jokes or comments were directed to him.

Plaintiff's and Kronk's difficulties with each other continued throughout their relationship. When Kronk became a shop steward, plaintiff testified that he just "didn't deal with him," and that he managed to avoid Kronk by getting what he needed from other shop stewards. Later, in August 2002, Kronk was promoted to a management position and became plaintiff's supervisor.

In June 2002, the defendant reconfigured the stops that each route driver was required to make. As a result, the number of plaintiff's stops increased. Plaintiff testified, however, that there were white drivers whose stops also increased in number, and there were black and white drivers whose stops decreased in number. Although plaintiff believed that he was given an unfairly burdensome workload, he could not identify any route driver who was given a lighter workload.

Plaintiff alleges that when he told Kronk that he could not complete his new route within his allotted work hours, Kronk responded by threatening to fire him. On September 26, 2002, Kronk told plaintiff that he could not take a "split day" vacation day that

had been scheduled for the next day, and that he would not be allowed use a company vehicle for a parade as he had done in the past. According to plaintiff, Kronk stated that a white driver, Brian Berkfield, would be allowed to take his vacation day. Berkfield was on modified duty at the time and was not considered part of the available labor pool because he could not drive a route. An argument ensued in which Kronk allegedly accused plaintiff and other black drivers of constantly complaining and of "milking the clock," and plaintiff called Kronk a "punk ass racist MF." The police were called, and plaintiff was given a 30-day suspension.

Plaintiff was allowed to return to work, subject to the terms of a Last Clear Chance Agreement that he signed on October 22, 2002. Among other things, the agreement provided for immediate termination of plaintiff's employment if he violated any Class B or Class C work rule or more than one Class A work rule within the ensuing 12-month period.

Within eight months of his return to work, plaintiff committed several violations of the work rules. First, on January 20, 2003, plaintiff lost his two-wheel cart. Plaintiff contends that the chain broke, causing the cart to fall from the truck. Plaintiff was charged with causing a preventable accident, a Class B work rule violation. Plaintiff testified that the charge was later dismissed; however, the record shows that the decision was not reviewed because his appeal was untimely.

On February 5, 2003, plaintiff committed a Class A work rule violation by failing to get a customer invoice signed. Kronk testified that there were other drivers who also committed the same violation and that they, too, were disciplined.

On May 17 and May 22, 2003, plaintiff received two Class A infractions for exceeding the driving time allowed by the Department of Transportation. On June 7, 2003, he committed another Class A violation by driving for a longer period than DOT regulations allowed. Kronk testified that when he became a supervisor, there were many drivers who exceeded the allowed driving time. For a first offense, the driver was issued a written warning. Subsequent offenses were punished by suspension or termination, according to the defendant's progressive discipline procedure.

Plaintiff was discharged on July 11, 2003. The stated reason for the termination was violation of the Last Clear Chance Agreement.

II. **Legal Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all

reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Fed. R. Civ. P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

### III. Discussion

Employment discrimination on the basis of race is prohibited by Title VII. The burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) is routinely applied when the plaintiff is unable to present direct evidence of an employer's alleged

discriminatory motive.[1]  See, e.g., Calder v. TCI Cablevision of Missouri, Inc., 298 F.3d 723, 728-29 (8th Cir. 2002).  Under the burden-shifting analysis, plaintiff must first establish a prima facie case of intentional discrimination.  McDonnell Douglas, 411 U.S. at 802; Kim v. Nash Finch Co., 123 F.3d 1046, 1056 (8th Cir. 1997).  If plaintiff establishes a prima facie case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  McDonnell Douglas, 411 U.S. at 802.  If defendant articulates such a reason, plaintiff must then demonstrate that defendant's reason is a pretext for discrimination.  Id.; Kim, 123 F.3d at 1056.  The burden of proving discrimination remains on plaintiff at all times.  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515-16 (1993).  Plaintiff must do more at the pretext stage than discredit defendant's reason; plaintiff must show that defendant's articulated reason is a cover up for unlawful discrimination.  See id.; see also Ryther v. KARE 11, 108 F.3d 832, 837 (8th Cir. 1997) (en banc); Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 777 (8th Cir. 1995).  A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's proffered reason is false, may permit, but does not require, the factfinder to conclude that the actual reason was discrimination.

---

[1]The Eighth Circuit has held that the Supreme Court decision in Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003) (plaintiff not required to provide direct evidence of discrimination to be entitled to mixed-motive jury instruction) does not alter the McDonnell Douglas burden-shifting analysis. Strate v. Midwest Bankcentre, Inc., 398 F.3d 1011, 1017(8th Cir. 2005).

Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000).

To avoid summary judgment, a plaintiff alleging discrimination must present evidence that, when viewed in its entirety, (1) creates a fact issue as to whether the employer's proffered reason is pretextual, and (2) creates a reasonable inference that a discriminatory motive was a determinative factor in the adverse employment decision. Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1336-37 (8th Cir. 1996); see also Krenik v. County of Le Sueur, 47 F.3d 953, 958 (8th Cir. 1995). Evidence of pretext alone is not sufficient to avoid summary judgment. Ryther, 108 F.3d at 837.

To establish a prima facie case of employment discrimination, a Title VII plaintiff must show (1) that he is a member of a protected class, (2) that he was meeting the employer's legitimate job expectations, (3) that he suffered an adverse employment action, and (4) that similarly situated employees outside the protected class were treated differently. Tolen v. Ashcroft, 377 F.3d 879, 882 (8th Cir. 2004).

Plaintiff claims that the cancellation of his September 27, 2002 vacation day was racially discriminatory because a similarly-situated white employee was given more favorable treatment. The Court finds this claim immaterial, as plaintiff received a 30-day suspension on September 26, 2002. Thus, the denial of the vacation day was superseded by the suspension. In any event, however, the evidence shows that the white employee, Brian Berkfield, was not similarly-

situated because he was not part of the available pool of route drivers due to his modified duty status.

Plaintiff also claims that his suspension and subsequent reinstatement under the Last Clear Chance Agreement were racially discriminatory.  As discussed above, plaintiff was suspended after he called his supervisor Kronk a "punk ass racist MF."  He was allowed to return to work after agreeing to certain conditions that were spelled out in the Last Clear Chance Agreement.  Plaintiff has not identified any white employee who directed profanity toward a supervisor but was not suspended or whose return to work was not subject to terms like those of the Last Clear Chance Agreement.[2]

Plaintiff next claims that his termination was discriminatory. It is undisputed that plaintiff violated company work rules after he was reinstated pursuant to the Last Clear Chance Agreement.  Under the terms of that agreement, the defendant could have terminated plaintiff on January 20, 2003, when he committed the Class B work rule violation.  However, it was not until plaintiff committed several more violations that the defendant exercised its authority to discharge plaintiff.  The testimony of Kevin Kronk shows that other drivers committed Class A work rule violations by exceeding the limit on driving hours, and that those employees were disciplined according

---

[2]  Plaintiff has submitted the affidavit of Michael S. Jackson, a former employee, who states that "[w]hite drivers can exchange cuss words and argue with Kronk without later getting into trouble for it."  Because Jackson was not disclosed by the plaintiff as required by Rule 26(a)(1) or in response to defendant's interrogatories, the Court will not consider the affidavit.

to the company's progressive discipline system.  There is no evidence that any white employee whose employment was subject to the terms of a Last Clear Chance Agreement was not discharged when those terms were violated.

The record also fails to support plaintiff's claims of racial discrimination in work assignment. Plaintiff's allegation of discriminatory treatment in the number of stops he was required to make on his route is belied by his own testimony that the route reconfiguration implemented by the defendant in June 2002 affected black and white drivers equally.

With respect to his claim of racial harassment and hostile work environment, plaintiff must prove that (1) he is a member of a protected group; (2) unwelcome harassment occurred; (3) a causal connection existed between the harassment and his protected-group status; (4) the harassment affected a term, condition or privilege of employment and (5) the employer knew or should have known of the harassment and failed to take prompt and effective remedial measures to end it. <u>Willis v. Henderson</u>, 262 F.3d 801, 808 (8th Cir. 2000). "Hostile work environment harassment occurs when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993).  The factors to consider include the frequency and severity of the discriminatory conduct;  whether  the  conduct  is  physically  threatening  or

humiliating, or merely an offensive utterance; and whether the conduct unreasonably interferes with an employee's work performance. Bradley, 232 F.3d at 631-32 (8th Cir. 2000).

Title VII does not "impose a code of workplace civility." Palesch v. Missouri Com'n on Human Rights, 233 F.3d 560, 567 (8th Cir. 2000). "Not all unpleasant conduct creates a hostile work environment. Rather the plaintiff must show that he was singled out because of his race, and that the conduct was severe and pervasive." Williams v. City of Kansas City, Missouri, 223 F.3d 749, 753 (8th Cir. 2000). Plaintiff testified Kronk did not direct any racially derogatory remarks toward him. However, he testified that in the 1980s, Kronk made racially derogatory remarks about black residents in East St. Louis and called a black driver "pepper," and that on September 26, 2002, Kronk stated that plaintiff and other black drivers constantly complained and that they "milked the clock." Although such comments are offensive, the Court finds that plaintiff has failed to show that in the aggregate they were so severe and extreme that a reasonable person would find that the terms or conditions of plaintiff's employment had been altered. See Duncan v. General Motors Corp., 300 F.3d 928, 934 (8th Cir. 2002) [citing Scusa v. Nestle U.S.A., 181 F.3d 958, 967 (8th Cir.1999) (experiencing unpleasant conduct and rude comments does not equate to severe or pervasive harassment that altered conditions of employment)].

IV. **Conclusion**

For the aforementioned reasons, the Court concludes that defendant is entitled to judgment as a matter of law on plaintiff's claims. Accordingly,

**IT IS HEREBY ORDERED** that the motion of defendant Coca-Cola Enterprises for summary judgment [#29] is **granted**. A separate judgment in accordance with this Order will be entered this same date.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE


Dated this 22nd day of August, 2005.